IN THE UNITED STATES BANKRUPTCY COURT FOR THE
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| IN THE MATTER OF: ) | |
| ) | Chapter 7 |
| TRAVIS L. MURPHY, ) | Case No. 18-71012 |
| ) | |
| Debtor. ) | |
| ) | |
| ) | |
| UMB BANK, N. A., ) | |
| ) | |
| Plaintiff, ) | Adversary No. |
| ) | |
| v. ) | |
| ) | |
| TRAVIS L. MURPHY, ) | |
| Serve: 27260 County Highway 2 ) | |
| Chandlerville, IL 62627, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**UMB BANK, N. A.'S COMPLAINT OBJECTING TO DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. §§ 523(a) AND 727**

UMB Bank, N. A. ("UMB") for its Complaint Objecting to Dischargeability of Debt pursuant to 11 U.S.C. §§ 523(a) and 727 against debtor Travis L. Murphy ("Debtor") states as follows:

**Jurisdiction and Venue**

1. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). This adversary proceeding arises under 11 U.S.C. §§ 523(a) and 727 and Federal Rules of Bankruptcy Procedure 4004, 4007 and 7001.

2. This is a "core proceeding" as defined in 28 U.S.C. § 157(b).

1

3. UMB consents to entry of final orders or judgment by this Court in this proceeding.

## Parties

4. Plaintiff UMB is a national banking association having its principal place of business located at 1010 Grand Boulevard, Kansas City, Missouri.

5. Defendant Travis L. Murphy is the debtor in the above-captioned Chapter 7 bankruptcy case, and may be served at 27260 County Highway 2, Chandlerville, IL 62627 and through counsel.

## Allegations Common to All Claims

**A.     The Loans**

6. John H. Murphy, Jr., Carolyn J. Murphy, and Travis L. Murphy (collectively, "Borrowers") were historically engaged in farming real property that they owned and that they rented from various landlords.

7. Beginning in October 2016, UMB made the following loans to Borrowers:

    a. On or about October 14, 2016, UMB extended a loan to Borrowers in the original principal amount of $114,000;

    b. On or about October 14, 2016, UMB extended a loan to Borrowers in the original principal amount of $1,476,000;

    c. On or about October 14, 2016, UMB extended a loan to Borrowers in the original principal amount of $1,762,000;

    d. On or about October 14, 2016, UMB extended a loan to Borrowers in the original principal amount of $551,000; and

    e. On or about October 14, 2016, UMB extended a loan to Borrowers in the original principal amount of $150,000.

(the "October Loans").

8. Beginning in July 2017, UMB made the following additional loans to the Borrowers:

   a. On or about March 15, 2017, UMB extended a loan ("Loan 101") to Borrowers in the original principal amount of $1,865,000; and

   b. On or about July 26, 2017, UMB extended a loan to Borrowers in the original principal amount of $2,500,000.

(the "Additional Loans").

9. The October Loans and Additional Loans (collectively, the "Loans") are evidenced by the loan documents attached hereto as **Exhibits A-I** and are incorporated herein by this reference.

10. The Loans are secured by approximately 440.61 acres of real property located in Cass County, Illinois, a portion of which contains a grain facility (the "Real Property"). Copies of the mortgages securing the Loans are attached as **Exhibits J-M** and are incorporated herein by this reference.

11. The Loans are further secured by certain personal property of Borrowers including all of Borrowers' equipment, crops, and farm products (the "Personal Property Collateral"). Copies of the Agricultural Security Agreement and financing statement evidencing the security interest in the Personal Property Collateral are attached as **Exhibit N-O** and are incorporated herein by this reference.

12. Loan 101 by its terms matured and became fully and immediately due and payable to UMB on September 15, 2017. The Loans are cross-collateralized, and a default under one of the Loans constitutes a default under all of the Loans.

B. **Grain Facility Appraisal**

13. Valley View Agri-Systems ("Valley View") provided a bid (the "True Bid") to Borrowers in the amount of $986,837 to furnish, erect, and install grain handling and conveying

3

equipment, storage bins, a "wet" hopper tank, double-run grain pump, continuous-flow dryer, dry elevator leg, and supporting frame, stairway catwalk and related concrete and electrical appurtenances relating to completion of the Borrowers' grain facility (the "Grain Facility"). A copy of the True Bid is attached as **Exhibit P** and is incorporated herein by this reference.

14. Upon information and belief, Valley View also provided Borrowers with a Microsoft *Word* version of the True Bid.

15. In making the Loans UMB received one or more appraisals (collectively, the "Appraisal") for the Grain Facility authored by Briggs Appraisal Associates ("Briggs") as part of the loan application and approval process.

16. Included in the Appraisal was a document titled "Bid – 4.FCDL48-9, 1-NCHT30-845, and an 1126 Dryer on a 10" Loop" (the "Inflated Bid"), in the false amount of $2,639,500 from Valley View. A copy of the Inflated Bid in the form received by UMB is attached as **Exhibit Q** and is incorporated herein by this reference.

17. Upon information and belief, Borrowers provided Briggs with the Inflated Bid. The Inflated Bid was used by Briggs to establish for appraisal purposes the value of the Grain Facility. The Appraisal was premised upon the Inflated Bid. The Appraisal was then provided to UMB.

18. In Debtor's schedules, Debtor represented that the value of the Grain Facility was $2,650,000.00.

C. **Personal Financial Statements**

19. On December 30, 2015 Debtor John Murphy and Travis Murphy executed a balance sheet ("2015 Balance Sheet").

20. Notwithstanding the True Bid, the 2015 Balance Sheet values the Grain Facility at $2,650,000.

21. Debtor provided the 2015 Balance Sheet to UMB prior to UMB funding the October Loans.

22. On December 30, 2016 Debtor John Murphy and Travis Murphy executed a balance sheet ("2016 Balance Sheet").

23. Notwithstanding the True Bid, the 2016 Balance Sheet values the Grain Facility at $2,650,000.

24. Debtor provided the 2016 Balance Sheet to UMB prior to UMB funding the Additional Loans.

D. **Tax Returns**

25. Before closing the October Loans, Debtor was required to provide UMB with a copy of his 2014 Tax Return. The 2014 tax return provided to UMB was not actually filed by the Debtor with the U.S. Internal Revenue Service ("IRS"). The 2014 Tax Return provided to UMB was materially different than the 2014 Tax Return that Debtor filed with the IRS (the "Actual 2014 Return"). For example, on the 2014 Tax Return that Debtor provided to UMB, Debtor represented that he received $234,103 in gross income. This representation was false. In the Actual 2014 Return, Debtor represented that he received $40,185 in gross income. Debtor did not provide UMB with his Actual 2014 Return when he sought the Loans.

26. Before closing the October Loans, Debtor was required to provide UMB a copy of his 2015 Tax Return. The 2015 Tax Return provided to UMB was not actually filed by the Debtor with the IRS. The 2015 Tax Return provided to UMB was materially different than the 2015 Tax Return that Debtor filed with the IRS (the "Actual 2015 Return"). For example, on the

2015 Tax Return that Debtor provided to UMB, Debtor represented that he received $245,339 in gross income. This representation was false. In the Actual 2015 Return, Debtor represented that he received $38,541 in gross income. Debtor did not provide UMB with his Actual 2015 Return when he sought the Loans.

E.  **Grain Reporting and Sales**

   1.  **Grain Reporting**

   27.  On October 13, 2017 UMB conducted a grain inspection at Borrowers' farm in Chandlerville, Illinois. UMB was unable to locate and verify all of the grain pledged to UMB. Debtor would not permit UMB to access the grain bins to inspect their contents citing insurance reasons. However, Debtor signed a grain statement stating the following to UMB:

| Grain Type | Bushels | Value per Bushel | Location Stored | Total Value |
|---|---|---|---|---|
| Corn | 240,000 | $3.30 | Grain Bin | $792,000 |
| Corn | 120,000 | $3.30 | Bags | $396,000 |
| Corn | 80,000 | $3.30 | Bags (across River) | $264,000 |
| **Total** | **440,000** | | | **$1,452,000** |

   28.  On October 18, 2017 Debtor admitted the following to UMB:

   a.  Borrowers sold approximately 62,000 bushels (approx. value $198,000) of the 80,000 bushels of corn in the bags across the river to finance harvest expenses; and

   b.  There was approximately 140,000 bushels of corn in certain field bags rather than 120,000 bushels as previously represented in the grain statement.

   29.  On October 27, 2017 UMB personnel met with John and Travis Murphy who represented to UMB that there were only 285,000 bushels of stored corn.

   30.  On October 31, 2017 UMB performed a collateral inspection at Borrowers' farm during which UMB verified approximately 224,250 bushels of corn.

31. On February 12, 2018 Borrowers' counsel, Mr. Craig Randle, represented to UMB's counsel that Borrowers completed their 2017 harvest and had approximately 1,000,000 bushels of corn.

32. On March 29, 2018 John Murphy and Travis Murphy provided UMB a signed statement representing:

> Per your request, this letter confirms that no grain or livestock comprising security for the UMB Bank has been sold since the date of UMB's last inspection, including the 2017 harvest.

*See* March 29, 2018 Letter attached hereto as **Exhibit R** and incorporated herein by this reference. The last inspection was October 31, 2017.

33. The foregoing representations regarding bushel inventories were false. The March 29, 2018 Letter indicating no grain had been sold by the Borrowers since the last inspection on October 31, 2017 also was false.

34. On April 3, 2018 UMB filed suit against Borrowers in the Circuit Court of the Eighth Judicial District of Cass County, Illinois ("State Court") and filed a motion for the appointment of a receiver.

35. On May 8, 2018 UMB and Borrowers entered into a settlement agreement in which Borrowers represented that they had 540,000 bushels of corn in storage. A copy of the settlement agreement is attached hereto as **Exhibit S** and is incorporated herein by this reference.

36. In the settlement agreement, Borrowers agreed to the appointment of Mr. Brent King as Receiver if Borrowers defaulted under the settlement agreement.

37. Borrowers defaulted under the settlement agreement.

38. On May 18, 2018 the State Court appointed Mr. Brent King as the receiver (the "Receiver") over certain of Borrowers' real and personal property, including the Real Property and the Personal Property Collateral.

39. One of the Receiver's primary duties was to take control of Borrowers' grain.

40. The Receiver recovered 439,940.40 bushels of grain, which was 100,059.6 bushels less than Borrowers represented to UMB on May 8, 2018.

**2.    Unauthorized Grain Sales**

41. In the Agricultural Security Agreement (**Exhibit N**) Borrowers represented and warranted that they would notify UMB of the parties to which they intended to sell grain, and that all proceeds from the sale of Borrowers' grain would be made immediately available to UMB in a form payable to UMB and Borrowers. **Exhibit N**, at 2-3.

42. Borrowers informed UMB that they would be selling their grain to Archer Daniels Midland ("ADM").

43. Upon information and belief, from at least October 7, 2016 to May 19, 2018 Borrowers sold grain to ADM and Bunge.

44. On October 26, 2017 UMB sent notices of security interests in Illinois owned and/or operated by Cargill, ADM, and Consolidated Grain and Barge. After UMB issued its notices of security interests, two (2) joint checks were issued from ADM to John Murphy and UMB in the total amount of $23,476.98, which were ultimately endorsed by John and Carolyn Murphy and applied to the debt owed to UMB. The joint checks were dated November 2, 2017 and November 6, 2017, respectively.

45. Upon information and belief, after November 6, 2017 Borrowers knew about the notice of security interest and only sold their grain at Bunge. Based upon bank records,

Borrowers deposited approximately $430,427.08 from Bunge for the sale of grain between November 13, 2017 and May 19, 2018. Borrowers did not notify UMB that they were selling grain to Bunge, nor did Borrowers make the proceeds thereof available to UMB.

**F.     Transfer of Real Property**

46.     On May 15, 2018, the State Court set a hearing for May 18, 2018 to take up an emergency motion regarding the appointment of the Receiver.

47.     On May 15, 2018, Borrowers executed a quit claim deed transferring certain of UMB's real property collateral to the Murphy Family Trust without UMB's knowledge or consent. A copy of such vesting deed is attached hereto as **Exhibit T** (the "Grain Complex Deed").

48.     On May 24, 2018, the Grain Complex Deed was recorded.

**G.     Current Amounts Owing to UMB**

49.     Debtor filed his voluntary petition for relief under Chapter 7 of the Bankruptcy Code on July 12, 2018 (the "Filing Date").

50.     As of the Filing Date, Debtor owed UMB $8,300,527.07 in principal, $354,194.65 in interest (with interest continuing to accrue at $1,467.65 per day), $79,577.61 in prepayment penalties, and $100 in late fees.

**G.     Current Investigation**

51.     UMB continues to investigate the Debtor's financial affairs and has served subpoenas on several third parties. Accordingly, UMB's investigation is ongoing and it reserves the right to supplement this Complaint as UMB receives additional information.

**Count I – 11 U.S.C. § 523(a)(2)(A)**

52.     UMB incorporates by reference the allegations contained in the preceding paragraphs of the Complaint.

53. Debtor obtained money, property, services, or an extension, renewal, or refinancing of credit from UMB by employing false pretenses, false representations of material facts that Debtor knew to be false at the time the representations were made, and/or actual fraud other than by a statement representing the financial condition of Debtor including, without limitation, to making misrepresentations as to the nature, value, and amount of the grain held by Borrowers.

54. Upon information and belief, the misrepresentations made by Debtor were made with the intention and purpose of deceiving UMB.

55. UMB actually and justifiably relied on Debtor's misrepresentations.

56. UMB was damaged as a result of Debtor's misrepresentations.

57. The foregoing constitutes obtaining money, services, or an extension, renewal, or refinancing of credit through the use of false pretenses, false representations, or actual fraud under 11 U.S.C. § 523(a)(2)(A).

WHEREFORE, UMB prays for entry of a judgment finding that UMB's claims against Debtor are excepted from any discharge received by Debtor in his bankruptcy pursuant to the provisions of 11 U.S.C. § 523(a)(2)(A) and for such other and further relief as the Court deems just and equitable.

### Count II – 11 U.S.C. § 523(a)(2)(B)

58. UMB incorporates by reference the allegations contained in the preceding paragraphs of the Complaint.

59. Debtor used statements in writing that were materially false respecting his financial condition, including providing false and inaccurate tax return information, financial

statements, and by submitting to UMB an appraisal of collateral property premised upon the Inflated Bid.

60. Upon information and belief, Debtor caused the statements in writing described above to be made or published with the intent to deceive UMB.

61. UMB, to whom Debtor is liable for such money, property, services, or credit, actually and reasonably relied on the statements described above to UMB's detriment.

62. The foregoing constitutes use of a materially false statement in writing respecting the Debtor's financial condition on which UMB reasonably relied and Debtor made such statements with an intent to deceive UMB under 11 U.S.C. § 523(a)(2)(B).

WHEREFORE, UMB prays for entry of a judgment finding that UMB's claims against Debtor are excepted from any discharge received by Debtor in his bankruptcy pursuant to the provisions of 11 U.S.C. § 523(a)(2)(B) and for such other and further relief as the Court deems just and equitable.

## Count III – 11 U.S.C. § 523(a)(6)

63. UMB incorporates by reference the allegations contained in the preceding paragraphs of the Complaint.

64. Debtor was at all times aware that the sale proceeds of the Borrowers' grain were to be made available to UMB to pay the Loans as required by the Agricultural Security Agreement.

65. Borrowers notified UMB that Borrowers were selling their grain to ADM. The Borrowers concealed from UMB non-ADM grain sales and affirmatively but falsely represented to UMB that no grain sales had occurred or were occurring, in particular during the period from October 31, 2017 through at least March 2018. As such, Debtor knowingly, deliberately,

intentionally, wrongfully, and without justification or excuse, sold certain portions of UMB's collateral without UMB's knowledge, authorization, or consent, and Debtor did so in conscious disregard of his obligations and indebtedness to UMB.

66. Debtor knowingly, deliberately, intentionally, and wrongfully injured UMB, and damaged or destroyed UMB's interest in its grain collateral and the proceeds therefrom in the amount of at least $430,427.08.

67. The foregoing constitutes willful and malicious injury under 11 U.S.C. § 523(a)(6).

WHEREFORE, UMB prays for entry of a judgment finding that UMB's claims against Debtor in an amount of at least $430,427.08 are excepted from any discharge received by Debtor in his bankruptcy pursuant to the provisions of 11 U.S.C. § 523(a)(6) and for such other and further relief as the Court deems just and equitable.

### Count IV - 11 U.S.C. § 727(a)(2)

68. UMB incorporates by reference the allegations contained in the preceding paragraphs of the Complaint.

69. The Debtor, with the intent to hinder, delay, or defraud UMB, has transferred, removed, and concealed his property within one year before the Filing Date contrary to 11 U.S.C. § 727(a)(2). For example:

    a. Debtor was at all times aware that the sale proceeds of the Borrowers' grain were to be made available to UMB to pay the Loans as required by the Agricultural Security Agreement.

    b. Borrowers notified UMB that Borrowers were selling their grain to ADM. The Borrowers concealed from UMB non-ADM grain sales and affirmatively but falsely represented to UMB that no grain sales had occurred or were occurring, in particular during the period from October 31, 2017 through at least March 2018. As such, Debtor removed,

  transferred, and concealed property with the intent to hinder, delay, or defraud UMB.

c. Debtor transferred certain real property that is subject to UMB's lien to the Murphy Family Trust without UMB's knowledge or consent at the same time a Receiver was being appointed to take control of such property.

The above described transfers, removal, and concealment constitute a violation of 11 U.S.C. § 727(a)(2), and the Debtor's discharge should be denied.

  WHEREFORE, UMB prays for the entry of judgment against Debtor, denying his bankruptcy discharge pursuant to 11 U.S.C. § 727(a)(2) and for such other and further relief as the Court deems just and equitable.

### Count V- 11 U.S.C. § 727(a)(3)

70. UMB incorporates by reference the allegations contained in the preceding paragraphs of the Complaint.

71. The Debtor has knowingly provided false documents, records, and papers from which Debtor's financial condition might be ascertained.

72. Debtor used statements in writing that were materially false respecting his financial condition, including providing false and inaccurate tax returns and financial statements.

73. Debtor's use of falsified documents, records, and papers was not justified under the circumstances.

74. Such falsification constitutes a violation of 11 U.S.C. § 727(a)(3), and the Debtor's discharge should be denied.

  WHEREFORE, UMB prays for the entry of judgment against Debtor, denying his bankruptcy discharge pursuant to 11 U.S.C. § 727(a)(3) and for such other and further relief as the Court deems just and equitable.

**Count VI- 11 U.S.C. § 727(a)(4)**

75. UMB incorporates by reference the allegations contained in the preceding paragraphs of the Complaint.

76. The Debtor has knowingly and fraudulently, and in connection with the case, made a false oath or account contrary to 11 U.S.C. § 727(a)(4).

77. Debtor's schedules were signed under penalty of perjury. The Debtor's schedules list the value of the Grain Facility as $2,650,000, which is substantially similar to the Inflated Bid. Debtor states in his schedules in connection with the Grain Facility: "Value as of 2016 Bank Appraisal."

78. Debtor had knowledge of the misstatement.

79. Such misstatement constitutes a violation of 11 U.S.C. § 727(a)(4), and the Debtor's discharge should be denied.

WHEREFORE, UMB prays for the entry of judgment against Debtor, denying his bankruptcy discharge pursuant to 11 U.S.C. § 727(a)(4) and for such other and further relief as the Court deems just and equitable.

Dated: October 26, 2018

Respectfully submitted,

SPENCER FANE LLP

/s/ Eric L. Johnson
Eric L. Johnson     MO #53131
Andrea M. Chase    MO #66019
1000 Walnut St., Suite 1400
Kansas City, MO 64106
(816) 474-8100 (telephone)
(816) 474-3216 (facsimile)
ejohnson@spencerfane.com
achase@spencerfane.com

WA 12004003.3

WA 12004003.3

Eric C. Peterson    MO #62429
1 Northwood Blvd., Suite 1000
St. Louis, MO 63105
(314) 863-7733 (telephone)
(314) 862-4656 (facsimile)
epeterson@spencerfane.com

Attorneys for UMB Bank, N. A.